this case is 25-3067 United States v. Williams. Judge Timkovich and may it please the court. My name is Dan Hansmeier. I'm with the Kansas Federal Public Defender's Office and I represent the appellant Edwin Williams. The question presented in this appeal is whether district courts have the statutory authority to include payment language within treatment conditions of supervised release. I guess there's three things going on. We've made a pitch in our reply brief that this can be a really easy case based on what the government said on page 15 of its brief about not revoking people for failure to pay. If you want to say that and send us all home you can do that. I assume I didn't fly all the way out to Denver for you to do that so I'll move on. The second thing is prudential ripeness. I don't want to talk about prudential ripeness. I briefed it exhaustively in my reply brief. I'd prefer to stand on the briefs. Also if I'm going to lose this appeal that would be the way to lose it not on the merits. So if I can just transition to the merits that's where I'd prefer to spend my limited amount of time. So we think we have text. This is an issue of statutory interpretation. We believe we have the text. We believe we have statutory context. We believe we have statutory history and we think we have a ton of precedent that supports us in this case. So to start with the text essentially this court needs to find statutory authority for courts to do this. We don't think it can. The specific statute that authorizes treatment conditions is 3563b9. That statute says nothing about requiring defendants to pay for their treatment. That matters. Courts do not supply emissions. Supplying emissions transcends the judicial function. We would simply ask you not to supply that omission as a textual matter. That conclusion also flows from. What about B20? And that maintenance of a child. I know that's a different aspect but it suggests that some conditions can have a payment obligation. So I actually disagree with that, that that's the implication. I think the implication from the inclusion of payment language in other provisions within B20 is that Congress did not, intentionally did not include payment language within B9. Okay, I think that's a good response. What about B22? Satisfies, quote, satisfies such other conditions as the court may impose. So right, I mean this is, I think this is what the district court relied on. I don't think this makes any sense in this case because B22 is a catch-all provision for conditions of probation and we have a catch-all provision for conditions of supervised release in 3583d. So I think if you want to rely on a catch-all provision, it has to be in 3583d. I'm sorry, can you explain that again? Why we can't rely on the catch-all in 22? Well, so. It says you can impose mandatory conditions to satisfy such other conditions as the court may impose. Correct, but that is a catch-all for probationary conditions and this is supervised release and the supervised release statute has its own catch-all provision. So I mean, essentially, if you were to write an opinion saying we're relying on B20, 3563 B22, you just made the catch-all provision in 3583d entirely superfluous. There's just no point if you're going to rely on the other catch-all provision. So essentially, your argument would indicate that any specific condition has to be specifically authorized in the statute. That's not true. Well, then why doesn't 3583d provide all the power the court needs, you know, conditions as needed? Because there's a specific statute that covers treatment conditions. So I'm relying on the specific over general canon of construction and also the canon against surplusage. And so, because we have a specific provision that enumerates treatment conditions and that provision does not include payment language, you should not add that language to the specific provision. Now, for conditions that are not enumerated at all, that is what the catch-all provision covers. So for instance, you know, don't associate with gangs. That's not an enumerated condition. I wouldn't stand here and say a court couldn't impose that condition. That would be in any other condition if it satisfies the three factors in D1, D2, and D3. So that's the difference, is that we have the enumerated condition in B9. And I mean, this is – Do you have any authority to suggest that that's how we should read it? If it's not explicit, you don't – you just don't – you don't have authority unless there's explicit authority granted. Yeah. I have a ton of authority. Okay, what's your best authority? So in the conditions context, we have this court's opinion in Prescott Court. Anything in terms of like this type of a payment, though? Yes. I mean, we have this court's opinion in Prescott Court. I mean, that case involved judges, and there's other judges from other circuits about this on these charitable organizations courts wanting to impose – I don't want to impose a fine. I want you to pay a charitable organization. That was totally different. That undermined the entire concept of the statute. They were paying corporations instead of the victims, which was the point of the statute. I don't think it is totally different because what this court said is the Probation Act did not intend to authorize the district courts to direct the payments of funds as condition of probation beyond the expressed authorizations contained in the statute. That's right, and there was an express authorization that goes to the victims. This was about who it goes to, not about the payment itself. It was about who it's directed to. That's not our question here. We know what it's directed to. Well, the principles are the same, though. I don't think they are. I think it's about who you can direct a payment to as opposed to whether you have authority to direct a payment. And that's the question here. Anything else besides that case? We have the Fifth Circuit's opinion in Jimenez about court-appointed counsel fees. I think this is important because there's a statute, 3006A, that allows a judge to impose court-appointed attorney fees. What the Fifth Circuit said is you can't make that a condition of supervised release because it is not authorized by the conditions statute. That's entirely analogous to what I'm saying here. You have the Ninth Circuit's opinion in Lakatos. That case involved 3563B20, the child support obligations. The district court did impose child support obligations at a rate different than the state court order. The Ninth Circuit said you can't do that. You have to follow the statute. That's exactly what I'm saying here about 3563B9. That's different also. If the statute says follow the state court order and the court says no, you don't have to follow the state court order, that's not what we have here either. That's just nothing like this. I just completely disagree with you. 3563B20 says you can impose child support as a condition of supervised release. And you have to follow what that provision says. The district court in that case did not follow what the provision says because it went beyond what the child support obligation was. And what I'm saying is the district court did not follow it. Right. And it says you've got to, it's explicit that you've got to pay, you can pay for this, but you can impose this, but you can only impose it for what we tell you you can impose it for. That's not what we're dealing with here. So I think it is. We're dealing with a condition that's been imposed for treatment and the court's saying, and I'm going to direct you to pay for that treatment. There's nothing saying, there's essentially explicit in the statutes you're talking about. I don't think that's right. I think if you read 3563B20, there's nothing explicit saying you can't, you cannot depart from the court order. It's a general provision just like this one, but it doesn't include the specific authorization. We also have Ferguson from the Fifth Circuit. That's about 3563B19 and home detention. The district court in that case imposed a home detention condition outside the scope permitted by that statute. The Fifth Circuit said you can't do that. You have to stick within the scope of the provision. That's exactly what we're saying here. Kottman from the Third Circuit, that involved buy money and 3563B3 and restitution. They said, you know, buy money isn't restitution. There's no specific provision authorizing the payment of buy money as condition of supervised release, so you can't do it. I guess I see what you're saying is if we had a provision here saying, well, you can direct payment of substance abuse treatment, which is one of the orders here, but you can't direct payment for mental health treatment, which we also have here, and the court directed payment for mental health treatment. That would be different than where we simply don't have any, there's just nothing here as to whether you can or can't direct payment for these two kinds of treatment. Well, that's true in that absence. And I think the cases that you talk about, and again, I understand you disagree with me, but they seem to be statutory obligations, or you can direct payment for a particular obligation, and that's explicit what that obligation is. That means you can't go beyond that. And I think that is what, Judge Moritz, throughout And maybe, yeah, I understand we're not agreeing on this, so I apologize, but yeah. I mean, throughout 3563 are payment obligations as discretionary conditions. I mean, they're just there, but they're not in 3563B9. Now, why would Congress not include them in 3563B9, but include monetary obligations everywhere? And if you're going to read in, if you're going to say that we don't care that it is an absent provision, and we're going to allow courts to require defendants to pay for things that aren't within 3563, then you've just made the payment obligations within 3563 superfluous. There's no point for Congress to put any of that language within the statute if there's some inherent authority for district courts to make defendants pay for things on supervised release. You would just gut, I think, six provisions within 3563 if you do this. We haven't talked about 3672. What are the six? Excuse me? What are the six payment provisions? Well, you have restitution, you have fines, you have child support. What numbers are those? I think that's a good question. Restitution's two. B-3, I think B-1 is dependence, support dependence, is that right? B-1 is dependence. I can read it. It's not supposed to be a trick question. I'm looking at it. I'll figure it out. Yeah, I think B-20. Yeah, dependence. I want to say B-1. You have to support dependence, or you can impose that. B-1, B-20, B-3, and a couple others. Sorry, I'm not staring at the statute. I'm getting close to my rebuttal time. We haven't talked about 3672. I would just say 3672, the district court didn't rely on it. I don't think you should either. If you were to rely on it, though, I do want to make this last point, then I'll reserve the remainder of my time. The conditions in this case do not comply with 3672. So if you want to go down that route, I think you still have to send this case back. If you look at the record, page 34 to 36, that sort of explains that point. The Seventh Circuit relied on 3672-B, right? Yeah. And why shouldn't we rely on that? Well, a whole host of reasons. So that provision is not, so if you look at 3672, it does not, I'm going to kill all my time talking about the statute. I'll give you rebuttal. The previous lawyer gave us extra time. It doesn't exist within the supervised release statutory scheme, one. It doesn't mention conditions of supervised release or otherwise tie reimbursement mechanism to the reimbursement mechanism to supervised release. It doesn't cross-reference or reference 3563 or 3583 or vice versa. And look, the enumerated duties, you would think that if, so 3672 is structured in these paragraphs. It's not numbered. But you would think that if one paragraph could be a condition of supervised release, they all could. Well, that's not true. Try to make any of those other paragraphs a condition of supervised release. It doesn't work. The second to last paragraph is not limited. That's sufficient. Essentially, you're saying it just doesn't apply to conditions of supervised release. Is that your answer? That is. If I can make three, well. Well, you didn't want to make the points earlier. So if you want to go to something else, go ahead. Kind of in the groove right now. So I'll just go with it. The other enumerated, so that if you look at the second to last paragraph that talks about ordering treatment, it's not limited to supervised release. It can be someone on pretrial release. It can be someone with incompetency hearings. And then the last paragraph that we're talking about the reimbursement mechanism, the phrase is, quote, a person furnished such services, end quote, a person. Again, that's broader than just anyone on supervised release. And I will just, I have other things to say. I'll give you a rebuttal. But can you tell me what the fatal flaw in Beagle is, or your judgment? Well, probably the defense attorney who argued Beagle would probably be my answer. I mean, that's just not, the argument in Beagle was about a sufficient explanation for the condition. I mean, there was a, the case essentially came to you as a concession that this is allowed. This is proper. I'm arguing that that concession was wrong. And I just don't know how you take an unpublished opinion about a different issue that, you know, or the attorney conceded the point I'm arguing and say I lose because of it. I really hope you don't do that. Okay. All right, thank you.  We'll hear from the government.  Good morning, your honors. May it please the court, Jared Mag on behalf of the United States. Your honors, a district court's decision to require a defendant to assist in the cost of treatment imposed as a special condition. A supervised release is supported by the relevant provisions of 3553A, 3563, 3583D, and 3672. The defendant's facial challenge alleging that no authorization exists for such a condition must be rejected here. Now, apart from his decision not to challenge the underlying programming and drug treatment imposed as a condition of supervised release, the requirement that he also pay the cost of this treatment if he is financially able to do so is consistent with the relevant factors of 3553A and not inconsistent with guideline policy which aims to look at the individualized treatment of a defendant in each instance. The district court's authority to impose the financial requirement is contemplated by 3583D. There, Congress plainly stated that a district court may order any condition set forth as a discretionary condition of section 3563B and any other condition it considers to be appropriate to the extent that the condition satisfies the factors under 3553A, does not impose any greater deprivation of liberty, and is consistent with the policy statements of the condition. Simply put, 3583D allows for a special condition consistent with the factors of 3553A, and a district court does not run afoul of the law by imposing an additional cost incentive that will positively influence defendant's efforts at reintegration and rehabilitation. Now, make no mistake, the government stands in support of a defendant's recovery during the term of supervised release. The requirement that the defendant be required to possibly pay in support of his own treatment leads to greater success. Judge Murphy, I think you hit probably on the point that the government is relying on mostly is that 3583D really sets the groundwork for how this particular special provision is to be analyzed. Congress clearly gave the courts broad discretion in establishing special conditions. That language is seen both in 3583D and 3563B. That broad discretion allows for an individualized assessment of a defendant to determine whether or not their ability to assist in their own, well, really in the sense of their own treatment in the payment, if they're able to do so, is certainly not something that can run afoul of 3583D because it sets the benchmark, or it sets the groundwork for the provisions that the court has to meet. It has to look at the 3553A factors, has to determine if there's a deprivation of liberty, and has to determine if any of the, if that particular provision would run afoul of the policy guidelines. Mr. Court didn't really do that here. I mean, it kind of discussed the language, but I didn't really see any real analysis of the factors. It just recited some language and that it was no greater deprivation of liberty interest. In fact, the court even seemed to sort of hedge on that, and he said, when talking about whether there was a greater deprivation of liberty than reasonably necessary, Judge Crabtree said, well, we can't tell now. We don't really know because we can't tell now whether he'll be asked to pay. I thought that was a little bit odd. Yeah, I think the lower court's sort of analysis in looking at this, it certainly wasn't, I guess it was understandable that Judge Crabtree might have had some confusion about whether or not the defendant was asking in this instance as to whether or not the issue was could he pay, because, of course, that is the provision. Is he financially able to do so? And when Judge Crabtree is looking at that, he seemed to get to look at that issue maybe as a condition that would come up later, and that seemed to be his concern. But I would disagree that he didn't give full consideration to the issue of whether or not the underlying conditions were appropriate. Certainly, there is. Well, he basically said it's appropriate because I've imposed these treatment conditions, and so it's related to that. He didn't say very much. He does go through the fact that the defendant had a drug history. Sure, but that doesn't really support the payment part of it. I didn't understand the connection there. I think you've tried to make one by suggesting in your briefing and citing to a case or two that suggests that if the defendant has some skin in the game, well, then he's more invested or in the treatment. But there was nothing like that from the district court. Nothing at all. Right. He falls back on the Beagle decision sort of as a basis to find that. Right. And what about the Beagle decision? What does it really tell us? Well, it at least gives some indication that this court, in looking at Beagle, did not seem to raise any concerns with the fact that this type of payment could be made. Of course, that wasn't argued. It wasn't necessarily argued. It really is pretty meaningless. That's why I would sort of point, as Your Honor sort of alluded to, I'd point the court to the Hines decision as a more appropriate decision to look at in terms of relevance. Certainly, it's only persuasive. It's not this circuit. But at the end of the day, the Hines court certainly looked at this in the exact posture that the defendant brings the case today. There in Hines, the defendant raised the issue, particularly of whether or not this provision ran afoul of congressional authority to be able to allow for this to happen. And they fell back on 3672 as a basis.  And I think the appellant makes a pretty good argument that 3672 really can't be applicable here, can it? That's an interesting question. They didn't really analyze that. To some degree, and counsel can certainly correct me if I'm wrong here, but they seem to suggest that if the court were to restructure the order, if this were to be sent back and the court were to restructure the order, it certainly would be allowed to make this provision just writing it in a different format. So it's sort of six and one half dozen the other. You can either order it through the special provision as a special condition, or you can simply separate it out into a particular order itself under 3672. So that to me, I think there's an appreciation for the fact that Congress did authorize this. The courts looked at it as, well, if we're going to use a vehicle to impose this type of payment, 3672 certainly allows for that vehicle to exist. And the court being able to do that under 3583D as a measure, as a part of a special condition certainly fits within the court's authority. Because one, under 3553A, as we argue, it certainly incentivizes the defendant, and we believe it meets all of the factors under 3553A because, again, he has skin in the game to make sure that that treatment is followed through, gives him an opportunity to better his integration. And so it is certainly a factor that the government believes, and certainly has been stated in other cases, that this incentive is important for a defendant to succeed. We're not standing here trying to suggest that this payment is some sort of a fine or anything. This is something that the government truly believes in because we stand with the defendant to ensure that they have the best way to succeed on supervised release. And giving the district court the authority to impose a special condition like this certainly lends itself to the defendant being able to do so. So at the end of the day, if the court were to find that somehow this violates the statute in the way that the defendant says, it would certainly beg the question about whether or not the district court could just simply reform the language itself to fit 3672. And again, you're getting to the exact same issue. The defendant associating or being able to provide for cost toward his own treatment if he is financially able to do so. Do you, I know the government didn't rely on 3563b-22, the district court brought that up sua sponte. Are you suggesting that that somehow supports its probation? Only to the extent that it gives some sort of congressional intent on the idea that there is a much broader discretion when you're getting into the conditions that someone is being given by the district court in these, both on a probationary status and a supervised release. And again, I don't think that that should be undervalued here because congressional intent really is in the broader sense here, the idea that the district courts must look at each defendant in an individualized way. If you begin to cabin that discretion, you start to treat every defendant the same way. Congress certainly didn't want that to happen. It set the groundwork and set the parameters under 3583d by setting those three criteria that the court must meet. And again, our position is that when someone is told that they must assist in the payment, if they can do so, it certainly incentivizes them to be able to succeed on supervised release. Well, there certainly are plenty of other conditions in the statute where the Congress has specifically made it clear you can impose payment obligations. What does that mean? Does it mean the opposite can't be true, that you've got to have, if you don't have authority, you can't impose them? We don't believe so. And can you address some of the case law that Mr. Hansmeier was discussing that he said was analogous? Our position again is that 3583d drives this, that it isn't 3563 that drives the understanding. Certainly, Congress, when looking at the probationary factors, made a determination that there has to be certain payments under certain circumstances. Again, many of those are tying to the conviction themselves necessarily, but not all of them. But 3583d, knowing that, in terms of supervised release, that each individual defendant may have particular factors that they have to reach, set the gates that must be met, and those are 3553 deprivation of liberty and policy considerations under the guidelines. That is the only analysis that we believe that the court must go through. I think you can divorce, the court can divorce itself of 3563 in that instance, and therefore, anything under 3563 really doesn't have as much impact here as 3583d. I think what the defendant wants the court to look at is that those two statutes have to be read together in a way to establish congressional intent, but 3583d drives supervised release analysis. Is this, or is the payment scheme, is that standard practice for the District of Kansas judges? I don't want to speak for the entire district, Judge. I don't know, I will tell you in researching this issue, this seems to be at least a common factor amongst districts across the United States. How uniform that is, it's hard to say, because in a lot of instances, I think you have to look at it in terms of, is it uniform in the context of everybody who is getting treatment? Certainly there are going to be individual defendants where there's no treatment issue, but in terms of this particular language being uniform across the district, it certainly does come up quite often. I would say it's probably used more often than not under the circumstances. Most of the judges in the district, at least in the cases that I have handled, that language is incorporated into the overall supervised release provision. Can you respond to the argument that is made in the reply brief? I know you haven't had a chance to respond, that the government somehow conceded when you said in your brief that nothing suggests from the record of the district court's order that any failure by the defendant to contribute is a standalone violation that could potentially cause a revocation of supervised release. Now, I don't really need you to address whether that's a concession or not. I do wonder if that isn't an incorrect statement of the law. I mean, if you make it a mandatory condition of release, it certainly could be a standalone basis for revocation if he doesn't pay as directed, couldn't it? We, again, to sort of alleviate any confusion, yes. What I was trying to simply suggest is that the highly unlikelihood of that occurring under the circumstances of an individual who could show indigency, but I would agree with the court that in the event that a district court had someone, say, who was quite wealthy, certainly could impose that. Or maybe not quite wealthy, maybe just has the ability to pay something. That's really not what the condition requires. Not necessarily. You have to be quite wealthy. Right. And again, we're coming at it from a practical standpoint. And quite frankly, we've not seen, at least had a situation, and that sort of drove the issue about whether or not there was a rightness issue as to whether or not there were conditions that needed to be established before this question really was something that was appropriate to bring to the court. To clear up that issue, to be very clear, it looks like in the reply brief, the defendant himself is sort of arguing now without any issue that this is strictly a facial challenge to the statute. If that is the case, the government would concede that there is no rightness issue for the court to address, that if the court is only going to address the issue of whether or not there's authority under the statute, this is right before the court. Judge, I want to be as completely responsive to your question with respect to the issue of whether or not it's a standalone reason to go ahead and reject or to revoke someone's supervised release. Again, we made that argument to some degree under the rightness issue to try to suggest that that's an issue that would come up at a later time. But at the same point, we do concede that at the end of the day, a district court could do that. We just simply suggest that it's highly unlikely. I appreciate your acknowledgement of that. I see that I am exactly out of time. Unless there are further courts, we would ask the court to affirm the court's decision to impose this condition. Thank you, counsel. Kevin, could you give three minutes? Thank you. Let me just try to make a few real quick points and then maybe two broader points. So just, I think, Jared just said we're making a facial challenge to a statute. That, nope, we are not doing that. So please don't think I'm making any facial challenge to any statute. We're just challenging statutory authority for this particular type of condition. On the ground, I hope you all don't think that just rich people make these payments. I think, I mean, just anecdotally, poor folks pay for treatment in Kansas. There's a co-pay system. They do. That's how I understand it. That's why I'm here. I represent poor people. The reason why 3563B matters is because it's cross-referenced in 3583D. That's why we get to 3563B, and that's why I'm talking about 3563B-9. On this, so I have not conceded, hopefully you know this, I have not conceded that 3672 is the statute you should rely on. That's not true. I don't think you should. My only point was that if you're going to go down the Seventh Circuit's path, this particular condition is not consistent with 3672. That was my point. But there is a difference, and just to be clear, there is a difference between reimbursement and the threat of revocation for the failure to pay. What I am saying is that 3672 authorizes reimbursement at some later date, and that could be even after the person is not on supervised release, which is much more likely that they would have money to pay when they're further along in their lives post-prison. My only point is that they shouldn't be under the threat of revocation for failing to pay, and I think that's what all signs point to that when you read the statutes, the relevant statutes, the context, the history, all of it points that way. On 3583D, with my last minute, if that's the provision we're talking about here, this catch-all provision, first, we're still in the specific over general problem where we have a specific provision on treatment conditions that does not include payment language. We still have the surplusage problem that if you're going to allow a catch-all provision, monetary obligation, you still have all of the enumerated monetary obligations that become surplusage. And if you look at the 3583D1-3, I just, this idea, you know, the Seventh Circuit relies on this self-evident proposition that people love to pay for things that are ordered, poor people love to pay for things that they're supposed to, that they have to pay for, court tells them to pay for. I mean, I don't know why the Seventh Circuit thinks that. There are other circuits, I think the Third Circuit, the Ninth Circuit, this is in our briefs on page 36, Eiler and Evans have rejected that reasoning. I think you should too, also 3583D3, there is nothing in the guidelines that authorizes payment language, and so that doesn't work either. Thank you for the extra time. You're welcome. Thanks for the fine arguments. Thank you very much. Counselor, excused, and the case will be submitted.